IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ROBERT SHUPE, )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 1:18-cv-860
 )
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY AND HYATT )
CORPORATION DISABILITY PLAN, )
 )
    Defendants. )

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants' Motion to Strike (Dkt. 38) and the parties' Cross-Motions for Summary Judgment (Dkts. 31 and 35).

Plaintiff brings this action against Defendants seeking continuation of long-term disability ("LTD") benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA").

Plaintiff was employed by Hyatt Corporation in San Diego, California as an executive sous chef from 1997 until 2004 and earned a monthly salary of $5,250. Due to chronic back pain,

Plaintiff received back surgery in 2003. As the back pain persisted and worsened, Plaintiff ceased working for Hyatt Corporation on July 8, 2004. Plaintiff began receiving monthly LTD benefits from Hartford Insurance Company ("Hartford") on October 7, 2004, according to an insurance plan through his employment at Hyatt Corporation (the "Plan").

The Plan specified Hartford pay Plaintiff monthly LTD benefits due to his disability preventing him from performing his occupation as an executive sous chef. Hartford notified Plaintiff in April 2006 that effective October 7, 2006, the Plan's definition of "disability" would shift after the monthly LTD benefits had been payable for a period of twenty-four months. Under the shifted definition of "disability," Plaintiff would only remain entitled to LTD benefits if he were unable to perform any occupation for which he was qualified, not just his previous occupation. After the "any occupation" shift in the Plan, Hartford reviewed Plaintiff's medical records and decided to continue his LTD benefits.

After this initial decision, Hartford continued to regularly request information from Plaintiff regarding his claim. After another surgery in 2010, Plaintiff reported less pain and his physical examinations were normal. Plaintiff continued to report decreased pain and increased activity levels for the next five years. For this reason, Hartford conducted

2

surveillance of Plaintiff in 2015 and observed him driving a passenger to a medical facility and lifting a wheel chair from the trunk of the vehicle. This activity involved Plaintiff bending at the waist, unfolding and securing the chair, and pushing the wheelchair with a person seated.

On February 4, 2016, Plaintiff underwent a Functional Capacity Evaluation ("FCE") conducted by Alyssa Wolf, an independent physical therapist, at the request of his physician Dr. Whittenberg.[1] The purpose of this FCE was to determine his capacity to perform tasks at a sedentary demand level. The February 2016 FCE revealed that Plaintiff was capable of sitting for ninety-five minutes and standing or walking for 130 minutes. The physical therapist concluded in the FCE that Plaintiff could sit consistently for six hours of an eight-hour day if permitted to stand or walk every ten minutes to tolerance and could perform work at a sedentary demand level.

On March 1, 2016, Hartford's vocational rehabilitation clinical case manager conducted a vocational skills and educational background review of Plaintiff's claim based on the February 2016 FCE results. The purpose of this review was to compose an Employment Analysis Report ("EAR"). The EAR

---

[1] On the official FCE report, Ms. Wolf marked the date as February 4, 2015. Dr. Whittenberg requested this FCE in December 2015, and various other sources refer to this evaluation being performed on February 4, 2016. As such, the Court infers that the February 4, 2015 marking on the FCE was an error, and that the evaluation occurred on February 4, 2016.

3

delineated occupations that Plaintiff was physically capable of performing based on the results of the February 2016 FCE, his qualifications based on his level of education, training, and experience, and an earnings potential requirement of at least 60% of his prior monthly salary before the onset of his disability. The EAR found that Plaintiff was physically capable of performing three alternative occupations with minimal training, each at a rate of $3806.40 per month, which is greater than 60% of his prior monthly income.

Based on the February 2016 FCE and EAR results, Hartford terminated Plaintiff's LTD benefits on March 7, 2016 because it determined he was no longer disabled as defined by the Plan. Plaintiff was informed of the termination and that he had 180 days to appeal. Accordingly, Plaintiff timely submitted an appeal and supporting evidence to the claims administrator. Hartford reviewed and denied Plaintiff's appeal on January 6, 2017. In doing so, Hartford affirmed its determination that Plaintiff did not meet the Plan's definition of disability beyond March 7, 2016.

Plaintiff filed the Complaint in this case on December 19, 2017 in the United States District Court for the Southern District of California. The case was then transferred to this Court. The parties have filed cross-motions for summary judgment

and Defendants have filed a motion to strike a declaration attached to Plaintiff's Motion for Summary Judgment.

The Court first addresses Defendants' Motion to Strike the Declaration of Elliot Andalman and associated exhibits which was attached to Plaintiff's Motion for Summary Judgment. In ERISA cases, the only evidence that may be properly considered by a reviewing court is that which was in the administrative record, which is comprised of information that was before the insurance company's claims administrator at the time of its final decision. See Elliot v. Sara Lee Corp., 190 F.3d 602, 609 (4th Cir. 1999). The rare exception to this standard occurs when a district court finds that additional evidence is necessary for resolution of the benefit claim. Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1026-27 (4th Cir. 1993). One type of exception is the opinion of a medical professional on a complex medical question. Id. at 1027.

Here, Hartford issued its final decision to deny Plaintiff's appeal of termination on January 6, 2017. An exhibit to the Declaration contains a letter written on May 19, 2017 by Plaintiff's physician Dr. Whittenberg which was not part of the administrative record. The letter discusses a form provided by Hartford that Dr. Whittenberg completed on March 7, 2016 and was included in the administrative record. That form instructed Dr. Whittenberg to review the enclosed FCE report, agree or disagree

5

with the FCE conclusions, and respond with any comments she might have regarding the FCE conclusions. Dr. Whittenberg put a checkmark next to the statement "I agree with the FCE conclusions" and did not provide any additional comments. The February 2016 FCE states that Plaintiff "would be able to perform at a sedentary physical demand level job."

The May 2017 letter does not repudiate the checkmark made on the Hartford form, however, Dr. Whittenberg stated she now finds the February 2016 FCE to be consistent with subsequent FCEs done during the appeal period, as well as her personal findings of Plaintiff's physical capabilities. The letter ends by stating that Dr. Whittenberg does not foresee Plaintiff being able to maintain a full-time or part-time work position. The May 2017 letter was provided to Hartford after the end of the appeal period, and it declined to review the letter because the administrative record had already closed.

As Dr. Whittenberg's May 2017 letter from the Declaration does not repudiate her agreement with the February 2016 FCE results, the Court finds this Declaration and its exhibits are not new evidence, nor are they new medical opinions required to resolve this matter. The Court will grant Defendants' Motion to Strike.

The Court next turns its attention to the Cross-Motions for Summary Judgment. Summary judgment is appropriate when a court

6

deems that there is no issue as to any material fact and that the moving party is thereby entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). When, as in the instant case, a court is presented with cross-motions for summary judgment, the facts relevant to each motion must be considered in the light most favorable to the nonmovant. Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003). A court must also consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. See Bacon v. City of Richmond, Va, 475 F.3d 633, 637-38 (4th Cir. 2007).

The parties have agreed in a joint stipulation that a de novo standard of judicial review applies to this case. By this standard, a court determines whether the LTD benefits were correctly denied based on the evidence in the administrative record. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). The burden of proof in an ERISA claim falls upon a plaintiff to prove that he is disabled as defined by the language of an LTD plan. 29 U.S.C. § 1132(a)(1)(B); Elliot, 190 F.3d at 603. In its review of the administrative record, a court determines whether the proof of disability submitted by a plaintiff is objectively satisfactory. Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 270 (4th Cir. 2002).

To determine whether Hartford erred in its determination, the Court must examine whether Hartford correctly applied the disability qualifiers from the Plan. Under the Plan, the term "disabled" applies to claimants who satisfy either the "Earnings Qualifier" or the "Occupation Qualifier." The "Earnings Qualifier" defines a claimant as "disabled" in any month in which they are gainfully employed and a physical or mental impairment causes them to be unable to earn more than 80% of their prior monthly earnings in any occupation for which they are qualified. The "Occupation Qualifier" defines claimants for whom the LTD monthly benefit has been payable for a period of at least twenty-four months as "disabled" if they are: (1) continuously unable to engage in any occupation for which they are or become qualified; and (2) not gainfully employed.[2] Plaintiff was not gainfully employed, so Plaintiff did not satisfy the "Earnings Qualifier" and Hartford had to attempt to apply the "Occupation Qualifier."

When applying the "Occupation Qualifier," one must determine the proper monthly earnings threshold to apply to potential alternative occupations. The 60% threshold used by Hartford in the EAR is not mentioned in the Plan. The 60%

---

[2] If the LTD monthly benefit has been payable for a period of less than twenty-four months, then the "Occupation Qualifier" is satisfied if a claimant is 1) continuously unable to perform the material and substantial duties of their regular occupation, and 2) not gainfully employed. This is the shift noted above.

threshold is based on an industry standard, however, and Hartford represents it utilized the threshold in good faith in the absence of policy language in the Plan specifying any wage threshold. Plaintiff contends that the proper threshold is at least 80% of his prior monthly salary. Plaintiff also contends that his pre-disability salary of $5,250 per month is subject to inflation when determining the threshold. Both the 80% threshold and the inflation of prior monthly salary are mentioned in the Plan under the "Earnings Qualifier," which, as discussed above, Plaintiff does not satisfy. The Court finds the industry standard of 60% of Plaintiff's prior salary without inflation to provide a reliable earnings threshold in the absence of specific policy language.

The EAR reported three alternative occupations that Plaintiff can physically perform, is qualified for, and pay greater than 60% of his prior salary. Thus, Plaintiff did not satisfy the "Occupation Qualifier" and did not meet the Plan's definition of "disabled."

The Court finds that Hartford did not act erroneously when it determined that Plaintiff did not meet the Plan's definition of "disabled" and terminated Plaintiff's LTD benefits.

For the reasons mentioned, Defendants' Motion to Strike will be granted, Plaintiff's Motion for Summary Judgment will be

denied, and Defendants' Motion for Summary Judgment will be granted. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 19, 2019